CASE 73—ACTION BY E. A. CARPENTER AGAINST E. A. CARPENTER'S
TRUSTEE TO VACATE THE TRUST.—JAN. 31.

# Carpenter v. Carpenter's Trustee.

APPEAL FROM HART CIRCUIT COURT—S. E. JONES, CIRCUIT JUDGE.

FROM A DECREE DISMISSING THE PETITION PLAINTIFF APPEALS. AFFIRMED.

WILLS—EXTRINSIC EVIDENCE—TRUST—PURPOSE—CANCELLATION.

Where testator directed that the share of a named son should be paid to a trustee, "to be used for [the son's] benefit, but that it be not paid into his hands," extrinsic evidence is inadmissible to show that the reason for creating the trust was the son's incapacity because of a disease then afflicting him, and that, because of his recovery, he is entitled to the possession and management of the estate.

C. B. LARIMORE, H. W. CURLE AND C. B. DOWLING, ATTORNEYS
FOR APPELLANT.

We hold that where an estate is placed in the hands of a trustee by the will of the testator for his son, because of the belief that the son is physically and mentally unable to manage and control the estate, the moment the beneficiary of such property held in trust can convince the chancellor that it was a mistaken idea or conception of the testator as to the son's condition, or the moment his is restored if he was so afflicted, in either case we insist that the trust should be turned over to

the beneficiary.   Webster v. Bush, Trustee, 19 Ky. Law Rep.,
565 (39 S. W., 411); 42 S. W., 1124.

D. A. McCANDLESS, ATTORNEY FOR APPELLEE.

The only question that can arise in this case is, can the court
nullify a clearly expressed valid provision of a valid will.   We
hold that, in the absence of ambiguity, extrinsic evidence can
not be introduced to explain, vary or contradict the terms of
the will itself; that the court has no right to inquire into the
causes and reasons governing the testator's intentions, or as
to his motives when the intent itself is clearly expressed.

### AUTHORITIES CITED.

Webster v. Bush, Trustee, 19 R., 565; Wheeler's Heirs v.
Dunlop, 13 B. M., 292; McCauley v. Peacher, &c., 87 Ky., 191;
American State Reports, vol. 59, p. 279; Bingel v. Voltz, 34 A.
S. R., 69; Mon. note and authorities there cited; 34 Am. Stat.
Rep., 64.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

This action involves a construction of the following item
of the will of John B. Carpenter, deceased:   "(6) I direct
the share of my son E. A. Carpenter to be paid into the hands
of a trustee to be appointed by the Hart county court, to be
used for his benefit and to keep him from want, but that it
be not paid into his hands."   The will of the father was ad-
mitted to probate, and the appellee, Truax Sturgeon, ap-
pointed trustee by the Hart county court.   Afterward the
cestui que trust instituted this action in the Hart circuit
court against his trustee, setting up in his petition the fore-
going item from his father's will, and alleging, substantially,
that for three or four years before his father's death he
(plaintiff) had suffered greatly from paralysis, and was un-
able to labor for his support and that his father, "probably
thinking or believing that his mind was impaired or would
become impaired by reason of the paralysis, which this plain-

tiff denies, and which was a wrong conception, if it was conceived by his father that his [plaintiff's] mind was impaired or would become impaired by reason of the severe stroke of paralysis," placed his (plaintiff's) estate in trust, as shown in the foregoing item of the will; that since his father's death his health has so improved as to render him physically able to prudently manage and control his estate, which is now withheld from him by his trustee, Truax Sturgeon; and he prays that the trust be vacated, and the fund constituting it be turned over to his hands for management, etc. A general demurrer was interposed to this petition, which was sustained by the court, and the appellant, declining to plead further, was dismissed.

This action is based upon the opinion of this court in the case of Webster v. Bush, Trustee, 39 S. W., 411, 42 S. W., 1124, 19 Ky. Law Rep., 565, which involved the construction of a clause in a will in all respects similar in principle to that at bar, in which it was held that where a testator devised an estate in trust for his daughter, under the supposition that she was of feeble mind, the court was authorized, upon an allegation that the physical incapacity had ceased to exist, to try this question, and, if it was established by the evidence, to discharge the trust. In that case Judge DuRelle delivered a dissenting opinion, which contains an admirable exposition of the law, and from which we adopt the following: "With the wisdom or unwisdom of the clause above quoted from the will this court has nothing to do, except in so far as it might shed light on the intention of the testator if ambiguity existed. There was no ambiguity. The testator had the absolute and unconditional right to place upon the devise to his daughter the limitations which he imposed, and no court has a right to assign to him a motive for these limitations, and, by denying the existence of a reason for that

motive, create a new will for the testator. To adjudge that
a court, in construing unambiguous language in a will, may
surmise a reason in the testator's mind for his clearly ex-
pressed intent, and then, upon evidence introduced by devisees
denying the existence of that supposititious fact, proceed
to set aside the plain expression of intent, is to nullify the
statute of wills. No trust could then be so carefully guarded
as not to be at the mercy of the imagination of the chancel-
lor. There can be no doubt that this trust comes within the
class which do not vest a legal estate in the *cestui que trust,*
being a case 'where such powers or duties were imposed with
the estate upon a donee to uses that it was necessary that
he should continue to hold the legal title in order to perform
the duty or execute the power.' Perry on Trusts, sec. 300;
also Id., sec. 305; Kay v. Scates (Pa.), 78 Am. Dec., 399,
and note. It seems to be equally well settled that 'where the
instrument is free from ambiguity, and there is no imperfec-
tion or inaccuracy in its language, the testator's intention is
to be collected from the words used by him and parol evi-
dence is not allowable for the purpose of adding to or ex-
plaining or subtracting from it, or to raise an argument in
favor of any particular construction. Phil. Ev., 545; 8 Bing-
ham, 244; Wigram on Ec. Evidence, 65. Extrinsic evidence
of intention is inadmissible for the purpose of supplying a
devise or any other material provision omitted by mistake,
or to superadd any qualification to the terms used, or
to evince a mistake in writing the instrument.' Stephen v.
Walker, 8 B. Mon., 602. It is not necessary here to inquire
whether the evidence introduced would be sufficient to justify
a discharge of the trust if the will had provided that it was
to continue only until the daughter became competent to
manage her estate. The proposition here stated is that, un-
der the terms of the will as written, no evidence can be in-

troduced to show what the reason was for the devise to the trustee, and that that reason never existed or has ceased to exist. To do so is to superadd a qualification to the terms used, and by parol to import into the will an intention which is not there expressed. Bingel v. Volz (Ill.), 31 N. E., 13, 16 L. R. A., 321, 34 Am. St. Rep., 64. It is to show by evidence *aliunde* a different intent on the part of the testator in reference to the devise to Euphemia from that manifested by the language of the will. The rule was stated by Judge Simpson in Stephen v. Walker, supra: 'The inquiry must be confined to the meaning of the words used, and hence all extrinsic evidence tending to prove, not what the testator has expressed, but what he intended to express, is inadmissible.' "

The question involved in the case at bar is not to be confused with the principle that a dry or simple trust will be vacated by the chancellor upon the request of the *cestui que trust*. A dry or simple trust is one as to which the trustee has no duties to perform, and the *cestui que trust* has the entire management of the estate. It is a simple separation of the equitable and legal estates, which can be united at the option of the *cestui que trust*. Woolley v. Preston, 82 Ky., 415. Nor is it to be confounded with those trusts which are created upon a declared condition which has passed away; the reason ceasing, the trust also ceasing. Such, for instance, a trust established for the benefit of a married woman, and she becomes discovert. In that case the trust will cease to exist when the declared disability ceases. Thomas v. Harkness, 13 Bush, 23. The case at bar presents an active trust, where the trustee has the sole management and control of the estate, and the question involved is whether evidence *aliunde* can be introduced to establish for a testator a motive for his action when he has expressed

none in his will, and where his language is perfectly plain and unambiguous. This we hold can not be done, and Webster v. Bush is no longer to be regarded as authority.

It seems to us a safer rule to leave intact this trust—the result of loving foresight reaching into the future to shield the object of its solicitude after the heart which it inspired has ceased to beat—than to subject it to the vicissitude of a judicial inquiry based upon the careless opinions of witnesses as to the sufficient restoration of the beneficiary's mind to warrant the nullification of the will of the donor.

The judgment dismissing the petition is affirmed.